ARKANSAS PORTLAND CEMENT COMPANY *v.* TAYLOR.

Opinion delivered July 1, 1929.

*Feazel & Steel,* for appellant.

*James M. Jackson, F. E. West* and *W. R. Donham,* for appellee.

SMITH, J. This suit was brought by the administrator of the estate of Ben L. Taylor, Jr., to recover damages on account of his death, which occurred while

he was employed by the appellant company at its cement plant in Howard County, on January 10, 1929. He had just assisted in unloading a car of cement, when his foreman directed him to assist in stacking certain timbers, which were being unloaded from a railroad gravel car. These timbers were referred to throughout the trial by the witnesses as cross-ties, but the foreman said they were cribbing timbers for handling machinery. The ground had been frozen, and had begun to thaw, and was therefore muddy and spongy, and the foreman admonished the men to be careful on this account, but he gave no warning or instruction as to the manner in which the ties should be stacked after they had been unloaded from the car. The ties had been sawed to uniform size of eight by eight inches, and were eight feet long, and two men were required to handle each tie.

When deceased began stacking the ties he used the same method that had been employed by others who had stacked ties before he was assigned to the job, which was to place one upon another, without using foundation timbers or strips between the timbers to hold the tiers together. When deceased began stacking the ties there was probably a half-acre of ground covered by them, which had been unloaded and stacked back from the track, but there was plenty of space for the ties which were being unloaded. The method previously employed had been to begin stacking the ties forty feet or more back from the track, and to build the piles toward the track. All the testimony shows that no foundation timbers had been furnished, nor had strips been supplied upon which to stack the ties so as to bind the tiers together; but the foreman testified that he had been employed on public works for twenty-five years and had never known this to be done, and there was no testimony to the effect that it was customary to furnish foundation timbers or small strips of lumber to be used as binders in tying the tiers of ties together.

The ground was not level, and sloped slightly from the track, but the incline is so slight that it would not be

noticed in the pictures taken shortly after the deceased was killed, if the fact had not been mentioned by the witnesses. In stacking the ties, deceased worked with a Mr. Britt; and, while the testimony is undisputed that they stacked ties as the other piles of ties had been stacked, we think the testimony is also undisputed that they started from the ground up the pile which collapsed and killed the deceased.

The foreman testified that he cautioned deceased and his fellow-servant not to stack the piles too high or to crowd the passageway between the piles and the railroad track, and to move the car containing the ties to give room to unload them when this became necessary. But, in testing the legal sufficiency of the evidence to support the verdict returned in the administrator's favor, we assume that this was not true, as deceased's fellow-servant denied that any direction was given as to the manner of piling the ties, except to move the car when this became necessary to get more space for the piles. The car was moved by pinching it along the track with a bar for a sufficient distance.

The theory upon which the case was tried is reflected by instruction numbered one, given at the request of the plaintiff. It reads as follows:

"You are instructed that if you find from a preponderance of the evidence in this case that the deceased, at the time of the injuries resulting in his death, was working under the immediate direction, orders and supervision of his foreman, and was in the discharge of his duty to the defendant company, that he was in the exercise of ordinary care for his own protection, that the danger was not known to and appreciated by him, and was not open or apparent to one's casual observation, and you further find from the evidence that the defendant company negligently failed to exercise ordinary care to furnish the plaintiff with a reasonably safe place in which to work, as alleged in the complaint, and while working under the direction, orders and supervision of his fore-

man, you find from the evidence that its negligence, if any, in this respect, was the direct and proximate cause of the injury to and the death of the deceased, it will be your duty and you are instructed to find for the plaintiff.''

This instruction, abstractly considered, appears to be a correct declaration of the law, but we are of the opinion that, when the testimony is regarded in the light most favorable to the plaintiff, as we have stated it, there was no case for the jury, and a verdict should have been directed in favor of the defendant.

We think there is no question but that the pile which killed the deceased toppled over on him because it had been made too high. These ties had been sawed, and their sides were smooth and square. There could have been no danger in piling one tie on another and a third on top of these, but it is apparent that as the pile increased in height the danger of one or more tiers toppling over increased. Nothing could be simpler than piling ties, and it does not appear that an adult man, of ordinary intelligence, such as the deceased was shown to be, would require instruction or warning as to this danger. There was no danger until the men themselves had created it by piling the ties too high, and in doing this they acted upon their own initiative. The instruction submits the question whether deceased and his fellow-servant were working under the immediate direction, orders and supervision of Clark, the foreman, but the undisputed testimony shows that Clark was not present when the pile toppled over, and had not been for some minutes, and when he last saw the pile it was only about five or six ties high, and then in a safe condition, and the foreman had left directions for the car to be moved when this was necessary to secure more space for piling the ties.

The undisputed testimony is that most of the piles were five, six, and seven, and possibly eight, ties high, but the one which fell and killed deceased was ten ties high. Several witnesses referred to all the piles as be-

ing about the same height, but the witnesses who had made a comparison in height agree that the pile which toppled over was higher than the others, and the pictures show this to be true.

The ties were eight inches square, and ten of them would make a pile eighty inches high, which is higher than the average man's head, and we think it was the height of the pile, conceding the ties were properly placed, which made deceased's place unsafe, and he did that of his own volition.

It is argued that the jury was warranted in finding that deceased should have been warned of this danger; but we think it was so obvious that no warning was required, and that it was one which he had caused himself.

It is also insisted that the jury was warranted in finding that the defendant should have furnished foundation timbers for the piles and strips of timber to bind the tiers of ties together, and, if this had been done, the pile would not have toppled over, even though it had been piled higher than the other piles. In answer to this, it may be said that the ties themselves would make their own foundation, and a perfectly safe one, if the pile was not carried too high. There was no testimony that it was ever customary to furnish cross-pieces to tie the ties together. There was no reason why the ties themselves might not have been used for this purpose if the piles were made high enough to require binders.

Appellee insists that ties could not have been used as binders by placing one tier at right angles with the tier upon which it rested, for the reason that, if this had been done, the binder ties would have extended out over the pile towards the railroad track and have reduced the width of the passageway between the pile and the track to a distance less than it should have been. There appears, however, to have been no reason why the protruding ends should not have been allowed to extend away from the track, instead of towards it, if, indeed, the pile was close enough to the track to make the ends protrude

beyond the pile. In other words, the pile itself could have been made square, or approximately so, and one tier could have bound the one upon which it rested, and this method could have been pursued until the pile was made as high as was desired. But, if the pile had not been made square and the binding ties would have protruded, this protrusion, as we have said, could have been from the track as well as towards it. It is true that no such directions as these were given to deceased and his fellow-servant, and they were not otherwise warned and instructed and directed as to how these ties should be piled. They were left to their own devices, but it is our opinion that the labor to be performed was so simple and the danger attending it was so obvious that liability cannot be predicated upon the failure to warn and instruct.

We are of the opinion therefore that a verdict should have been directed in favor of the defendant, and for this error the judgment must be reversed, and the cause will be dismissed.